UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BELTZ, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | No. 1:06CV0050 HEA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Robert Beltz' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, [#1], filed on April 6, 2006. The government has filed a written opposition. As grounds for his § 2255 motion, movant alleges:

1. 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B) are unconstitutional;

2. Due process of law violation because the Court improperly applied the U.S. Sentencing Guidelines, believing the Guidelines to be mandatory rather than advisory;

3. *United States v. Booker* is retroactively applicable to him because it established a new rule of constitutional law;

4. Movant has been denied due process of law in his sentencing in that the prosecution did not prove movant was involved with a Schedule II controlled substance, when the Government's proof only allowed a finding of a Schedule III substance;

5. Movant's due process rights were violated when the Court, in

imposing a sentence of 292 months on movant, a first-time offender, relied on the testimony of Chris Thompson;

6. Movant's right to due process of law during the trial and at the sentencing phase of the case was violated when the government offered something of value to Chris Thompson in exchange for his testimony;

7. Movant's right to due process of law at the sentencing phase was violated when the Court, crediting the testimony of Chris Thompson, imposed a sentence of 292 months on movant because it believed Chris Thompson's testimony established "relevant conduct;"

8. Movant was denied due process of law when the government created a significant sentencing disparity between the sentence movant received of 292 months, and the sentence Chris Thompson received;

9. The government engaged in misconduct in intimidating witnesses for movant at his trial by threatening the witnesses with reprisal if the witnesses testified for the movant, thereby depriving the movant of the right to a fair trial;

10. Movant received ineffective assistance of counsel in the investigation and trial stages of the case, and at the sentencing phase, as well as at the appellate stage of the case.

The Court concludes that Movant's claims are conclusively refuted by the record, and therefore, the Court will deny the motion without a hearing.

## **Facts and Background**

The facts of movant's underlying criminal case are summarized in the Eighth Circuit Court of Appeals decision as follows:

On September 25, 2002, law enforcement officers executed a search warrant at the residence of Robert Beltz in Campbell, Missouri. The search resulted in the seizure of numerous items commonly used in the production of methamphetamine. Most were discovered in a camera-monitored workshop area located behind Beltz's garage. There in a desk later identified as belonging to Beltz, officers found 1,700 pseudoephedrine pills which had been removed from their packaging and bagged; two plastic containers, two coffee filters, and a funnel, all containing a white residue; a jar containing a liquid byproduct of methamphetamine production; scales; plastic tubing; unused coffee filters; and a coffee grinder. Beltz's wallet and a handgun registered in his name were also in the desk.

Many other items involved in methamphetamine manufacturing were found in other parts of the workshop: a microwave containing digital scales and coffee filters; another microwave with a pie plate stained with chemicals used in different stages of methamphetamine production; additional jars and funnels; a lid appearing to be the top of an acid generator; liquid fire; muriatic acid; and a container of pseudoephedrine substance of a type produced during the manufacturing process. A drained can of starting fluid and a plastic bottle apparently used as an acid generator were found in a trash barrel near the workshop. Also on the premises were tanks with a residue believed by the officers to have resulted from anhydrous ammonia; a gas mask fitted with an ammonia cartridge; and twenty one other firearms. While searching the workshop, officers noted the presence of what appeared to be a homemade exhaust system. In a search of Beltz's bedroom, police discovered $4,500 in cash.

Beltz made a number of statements during the search after he had received *Miranda* warnings. In response to a question about the materials in the workshop, Beltz answered that they had been used in the production of methamphetamine. He pointed out that there was no anhydrous ammonia or sodium metal on the property, but he acknowledged the presence of liquid fire and batteries. Beltz also commented on the container of liquid byproduct, stating that the

substance was old and likely no longer of value in the manufacturing process. When asked about his own experience with methamphetamine, Beltz replied that he had used the drug for five years.

Beltz was charged in a superseding indictment with four offenses: possession of pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine, under 21 U.S.C. § 841(c)(2); attempt to manufacture methamphetamine, under 21 U.S.C. §§ 841(a)(1) and 846; making a firearm, under 26 U.S.C. §§ 5822 and 5861(f); and knowing possession of an unregistered firearm, under 26 U.S.C. §§ 5841 and 5861(d). Beltz unsuccessfully moved to suppress evidence, then moved for a bill of particulars and for election among counts or determination of lesser included offense. These motions were also denied, and the case proceeded to trial.

One of the witnesses called by the government was Christopher Thompson, who testified that he and Beltz had produced methamphetamine at Beltz's residence thirty to fifty times between 1997 and 2000. From photographs taken during the course of the search, Thompson identified many of the seized items as those he and Beltz had used in manufacturing the drug, including a set of pliers used by Beltz to remove lithium strips from batteries. Thompson also testified to their practice of each providing some of the ingredients necessary to produce the drug. Thompson most commonly acquired the anhydrous ammonia, and Beltz the pseudoephedrine.

A jury found Beltz guilty of possessing pseudoephedrine with reasonable cause to believe the chemical would be used to manufacture methamphetamine and of attempting to manufacture methamphetamine. It acquitted him of both firearm charges. Beltz moved for a judgment of acquittal on the attempt conviction because of insufficient evidence; the motion was denied. After a sentencing hearing, Beltz was given concurrent sentences of 240 months for unlawful possession of pseudoephedrine and 292 months for attempted manufacture of methamphetamine. Beltz also received concurrent terms of supervised

release, being sentenced to five years for unlawful possession of
pseudoephedrine and three years for attempted manufacture of methamphetamine.

*U.S. v. Beltz,* 385 F.3d 1158, 1160-1161 (8th Cir.2004).

## Standards for Relief Under 28 U.S.C. 2255

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Claims based on a federal statue or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994)(quoting *Hill v. United States*, 368 U.S. 424, 477 n. 10 (1962)).

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "unless the motion, files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (citing 28 U.S.C. § 2255). Thus, a "petitioner is entitled to an evidentiary hearing 'when the facts alleged, if true, would entitle [petitioner] to

relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotations and citations omitted). *Becht v. U.S.* 403 F.3d 541, 545 (8th Cir. 2005).

The applicable law to ineffective assistance of trial counsel claims is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless movant can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense. *Saunders v. United States,* 236 F.3d 950, 952 (8th Cir.) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *cert. denied,* 533 U.S. 917 (2001).

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir.), *cert. denied,* --- U.S. ----, 126 S.Ct. 221 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The court does not "second-guess" trial strategy or rely on the benefit of hindsight, *id.,* and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma-Rodriguez,* 423 F.3d 830, 836 (2005). The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Anderson,* 393 F.3d at 753-54 (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. U.S.,* 452 F.3d 1009, 1012-13 (8th Cir. 2006).

## Discussion

### Claims Not Raised on Appeal

**Constitutionality of Sections 841(b)(1)(A) and (B) and Claim that Movant's Due Process Rights were Violated with a Schedule II Controlled Substance, when the Government's Proof only allowed a finding of a Schedule III Substance.**

Movant first claims that 21 U.S.C. 841(b)(1)(A) and (B) are unconstitutional. This claim was not raised on appeal, and as such, he must demonstrate cause and prejudice for failing to raise it.

In *United States v. Sprofera*, 299 F.3d 725, 728 (8th Cir. 2002), the Court held that these Sections are not unconstitutional, in light of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Thus, movant cannot demonstrate the prejudice prong of his procedural default.

Movant's claim of a due process violation based on his allegations that the government's proof only supported a Schedule III controlled substance is without merit. This issue was not raised on appeal, and the jury, in its special finding, found that the amount of the substance containing methamphetamine involved in the commission of the offense of attempt to manufacture methamphetamine was five grams or more of pure methamphetamine. The maximum term of imprisonment

available based on this finding is forty years. 21 U.S.C. § 841(b)(1)(B). Movant has failed to demonstrate prejudice regarding this claim.

**Application of Sentencing Guidelines**

Movant challenges his sentence on several grounds. He argues that the Court erroneously believed at the time that the sentencing guidelines were mandatory, rather than advisory, contending that the decision in *United States v. Booker*, 543 U.S. 220 (2005) should be applied retroactively to his case. Because movant's case was not final at the time of the *Booker* decision, retroactivity is not an issue. Rather, the Court must analyze movant's claims under a plain error standard since movant failed to make a *Booker* type objection at any stage of these proceedings.[1] An error by the trial court, even one affecting a constitutional right, is forfeited by the failure to make timely assertion of that right. *United States v. Olano*, 507 U.S. 725 (1993). Plain error review is governed by the four-part test of *Olano*.

> [b]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If these first three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

---

[1] If applicable, movant's argument that *Booker* should be applied retroactively would not withstand challenge. In *Never Misses A Shot v. United States,* 413 F.3d 781, 783 (8th Cir.2005), the Eighth Circuit held that *Booker* does not be applied retroactively.

*Olano*, 507 U.S. at 732-36.

Plain error relief is warranted if the defendant can show that the district court committed an error that is plain, which affected his substantial rights, and which, if left uncorrected, would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States,* 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Pirani,* 406 F.3d 543, 550 (8th Cir. 2005).

Movant does not allege that any substantial rights were affected, rather he merely states that the Court sentenced him under the mistaken belief that the sentencing guidelines were mandatory. This argument, however, is not supported by Eighth Circuit law. The Court sentenced movant to 292 months. The maximum sentence allowable under the statute is 40 years, and the maximum under the guideline range is 293 months. The Eighth Circuit has determined that a mid-range sentence does not establish error. "We note that [defendant] received a sentence in the middle of his adjusted guidelines range, *cf. United States v. Perez-Ramirez,* 415 F.3d 876, 878 (8th Cir.2005) (finding persuasive the fact that a district court sentenced a defendant in the middle of his guidelines range, leaving 'unused some of its discretion to sentence [defendant] to a more favorable sentence under the mandatory, pre-*Booker* guidelines'), and we have found no other indication in the

record supportive of [defendant's] contention that he would have received a more lenient sentence under the advisory guidelines." *U.S. v. Norman*, 427 F.3d 537, 539-541 (8th Cir. 2005).

Movant has not established a reasonable probability of a more lenient sentence if he was sentenced under the advisory guidelines regime, therefore, he cannot show that his sentence was plain error, under *Booker*.

Movant also contends that his due process rights were violated because the Court erred in crediting the testimony of Chris Thompson with regard to "relevant conduct" because according to movant, Thompson's testimony was not truthful and Thompson's testimony was given in exchange for a more favorable reduced sentence.

As the government correctly argues, "nothing in *Booker* suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime." *Pirani,* 406 F.2d at 552, and n.4. See also, *supra*. (discussion regarding lack of evidence demonstrating an affect on substantial rights and a probability of a lesser sentence.) Movant provides no authority to support his position that the Court erred in considering the testimony of Thompson.

Furthermore, movant's argument regarding Thompson's sentence in exchange for his testimony is without merit. While it is true that federal law forbids the giving of "anything of value" in exchange for testimony, *see* 18 U.S.C. § 201(c)(2), any plea agreement between the government and Thompson does not constitute "something of value" in violation of any statute, nor does it render this Court's sentence in violation of movant's rights. "This court and nearly every other circuit to consider the improper compensation issue has held that a plea arrangement offered in exchange for testimony does not violate 18 U.S.C. § 201(c)(2). *See United States v. Johnson,* 169 F.3d 1092, 1098 (8th Cir.1999), *petition for cert. filed,* No. 98-4870 (U.S. June 15, 1999). Accordingly, [defendant]'s improper compensation argument fails." *U.S. v. Fairchild*, 189 F.3d 769, 777 (8th Cir. 1999).

**Disparity in Movant's Sentence and that of Chris Thompson**

Movant challenges his sentenced based on the grounds that Thompson received a lesser sentence than he. As the government argues, Thompson provided an "exceptional level of cooperation at the risk of his own well-being." Movant fails to present any authority to establish that his sentence should be similar to that of this cooperating witness. In exchange for his testimony, Thompson received a benefit in his sentence. As discussed *supra*, plea agreements are not invalid or

contrary to the law.  In providing the testimony, Thompson was entitled to the benefit he received.  Movant cannot establish that he is entitled to any similar benefit.

**Government Misconduct**

Movant contends that the government engaged in misconduct by intimidating witnesses for movant by threatening witnesses with reprisal if they testified.  Such conduct, according to movant deprived him of a fair trial.  In support thereof, movant submits the affidavit of Steve Wright who avers that he was intimidated by being arrested on pending charges when he appeared at a court proceeding.  There is no dispute that the charges on which Wright was arrested were pending at the time of the arrest.  The actions of law enforcement officials in arresting Wright on an outstanding warrant from Dunklin County were appropriate.  Movant's claim of intimidation and government misconduct is not supported by the record.

Furthermore, the testimony Wright claims he would have provided does not outweigh the evidence presented at trial regarding the items found at during the search, movant's statements regarding those items and his drug use.  Additionally, as the government argues, Wright would have been subject to impeachment because of movant's previous statements during an attempted proffer and plea negotiations.

**Ineffective Assistance of Counsel**

Movant argues that counsel was ineffective in a number of respects: for not filing motions to prevent the testimony of Chris Thompson on the ground of improper inducements by the government; failing to object to the government's misconduct in intimidating witnesses; not arguing that 21 U.S.C. §§(b)91)(A) and (B) are unconstitutional; failing to object to the Court's consideration of Chris Thompson's "relevant conduct" testimony; and failing to object to the utilization of the Sentencing Guidelines on Sixth Amendment grounds.

None of these claims satisfy the *Strickland* test for a finding of ineffective assistance of counsel. As discussed herein, none of movant's arguments entitle him to relief , thus, counsel's actions did not prejudice him in any respect: the government did not engage in any wrongdoing in its negotiations with Thompson, therefore, counsel's failure to object on the grounds of improper inducements for testimony is without merit. It should also be noted at this point that counsel did indeed strenuously object to the testimony of Thompson both during trial and at the sentencing stage.

Counsel is not ineffective for failing to object to a proposition that has no

legal basis. The Eighth Circuit has held that a facial challenge to Section 841 as not valid. *Sprofera*, 299 F.3d at 728. Any objection would be overruled in light of applicable law.

Movant's argument that counsel was ineffective for failing to argue the application of the Sentencing Guidelines was in violation of the Sixth Amendment is also without merit. Considering movant's sentence was within the Guideline Range and well within the statutory maximum sentence, there is no basis upon which movant can demonstrate that counsel's failure to make this argument resulted in prejudice.

Likewise, if movant contends that counsel was ineffective for failing to call witnesses based on his claim of intimidation, movant can show no prejudice. The witnesses would have been subject to impeachment based on movant's own previous statements regarding the 1,700 pseudoephedrine pills and how they arrived at this property.

**Actual Innocence Claim**

Finally, in his reply in opposition to the government's response to his motion, movant claims that "central to the Movant's claim for relief from the 292-month sentence which was imposed in this case is his claim of actual innocence with

regard to the pseudoephedrine pills which law enforcement authorities fount at Movant's home in the early morning of September 25, 2002." Movant raises this argument for the first time in his reply. Movant attempts to explain his previous statements regarding the purchase of the pills to authorities as meaning that only a small blister pack of pills were his and that the 1,700 pills were placed on his property by another person.

An actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo,* 513 U.S. 298, 315 (1995) (quotation omitted). "To establish a valid claim of actual innocence, movant must 'support his allegations of constitutional error with new reliable evidence ⋯ that was not presented at trial,' and demonstrate 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' *Id.* at 324, 327, 115 S.Ct. 851. This standard is strict; a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction. *See Johnson v. United States,* 278 F.3d 839, 844 (8th Cir.2002) (quoting *McNeal v. United States,* 249 F.3d 747, 749-50 (8th Cir.2001))." *Wadlington v. U.S.,* 428 F.3d 779, 783-86 (8th Cir. 2005). Under the modified test set forth in *English v. United States,* 998 F.2d 609, 611 (8th Cir.1993), (which

arises when "the newly discovered evidence involves a claim of perjury by prosecution witnesses,") movant must "prove any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (citations omitted). Before the Court may employ this relaxed standard, however, movant must show (1) the testimony was in fact perjured, and (2) the prosecutor knew or should have known of the perjury at the time the testimony was presented. *Id.* (citation omitted). *Waddington,* 428 F.3d at 783-86.

Movant presents the affidavits of himself, Roger McCollum and Michael Thompson in support of his actual innocence claim and his claim that the testimony of Chris Thompson was false. Initially, it should be noted under the strict test that the affidavits do nothing to establish movant's innocence, rather the merely set forth that the individuals never saw movant engage in illegal drug manufacturing. Furthermore, movant fails to set forth how this evidence is "newly discovered," in light of the fact that the existence of these individuals was known to movant well before his trial. Moreover, the movant fails to demonstrate 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. There is sufficient evidence to support movant's conviction considering the government's evidence of what was found at movant's residence during the search.

Under the relaxed standard, movant fairs no better on his "actual innocence" claim. Movant has failed to present any credible evidence that the testimony given by Chris Thompson was in fact perjured or that the prosecution knew or should have known of the perjury.

## Conclusion

For the foregoing reasons, this Court finds that the record conclusively establishes that movant is not entitled to entitled to relief under Section 2255.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to vacate, correct or set aside sentence, [# 1], is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability because movant has not made a substantial showing of the denial of a federal constitutional right.

Dated this 25th day of September, 2006.

_____
   HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE